UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DUSTIN BARTEL; et al.,

                                    Plaintiffs,

v.

TOKYO ELECTRIC POWER
COMPANY, INC.; et al.,

                                    Defendants.

Case Nos.:  18-CV-537 JLS (JLB)

**ORDER: (1) GRANTING TEPCO'S
MOTION TO DISMISS; AND
(2) GRANTING GE'S MOTION TO
DISMISS**

(ECF Nos. 19, 20)

Presently before the Court is Defendant Tokyo Electric Power Company, Inc.'s ("TEPCO") Motion to Dismiss, ("TEPCO MTD," ECF No. 20), and Defendant General Electric's ("GE") Motion to Dismiss, ("GE MTD," ECF No. 19).  Plaintiffs have filed a Response in Opposition to TEPCO's Motion, ("Opp'n to TEPCO MTD," ECF No. 24), and to GE's Motion, ("Opp'n to GE MTD," ECF No. 23).  TEPCO filed a Reply, ("TEPCO Reply," ECF No. 28), as did GE, ("GE Reply," ECF No. 27).  Having reviewed the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

On March 11, 2011, a 9.0 magnitude earthquake struck Japan, giving rise to tsunami waves more than 40 feet high that struck Japan's Fukushima-Daiichi Nuclear Power Plant ("FNPP").  Complaint ("Compl.") ¶ 244, ECF No. 1.  The plant's radioactive core melted

down, causing severe damage to the plant and releasing radiation as a result. *Id*. ¶¶ 251, 255. Plaintiffs, who are members of the U.S. Navy crew of the U.S.S. RONALD REAGAN, crews of other vessels participating in the Reagan Strike Force, land-based service personnel, and, in some cases, their dependents, were deployed to Japan as a part of a mission known as "Operation Tomodachi." *Id*. ¶ 6. Plaintiffs allege that the FNPP released radioisotopes and exposed them to injurious levels of ionizing radiation during the mission. *Id*. The release of radiation and subsequent injuries resulted from "negligently designed and maintained" Boiling Water Reactors at the FNPP. *Id*. ¶ 7.

Plaintiffs assert both individual and class action claims. *Id*. The causes of action include negligence, strict products liability, strict liability for ultrahazardous activities, res ipsa loquitur, negligence per se, loss of consortium, and survival and wrongful death. *See generally id*. Plaintiffs make these claims against TEPCO, as the owner and operator of the FNPP, and against GE, as the designer of the Boiling Water Reactors within the FNPP. *Id*. ¶¶ 207, 219, 223.

The procedural history of this case—and related cases—is long but relevant. A group of Navy sailors, including many of the Plaintiffs in this case, originally initiated an action against TEPCO in this Court, *Cooper v. TEPCO*, 12-CV-3032 JLS (WMC) ("*Cooper*"), on December 21, 2012. TEPCO moved to dismiss and the Court granted TEPCO's motion without prejudice. *Cooper*, 990 F. Supp. 2d 1035 (S.D. Cal. 2013). The plaintiffs filed an amended complaint, which TEPCO moved to dismiss; the Court granted in part and denied in part this motion, again permitting the plaintiffs to file an amended complaint. *Cooper*, 2014 WL 5465347 (S.D. Cal. Oct. 28, 2014). The plaintiffs did so, naming GE as an additional defendant (along with three other manufacturer defendants EBASCO, Toshiba, and Hitachi). TEPCO then moved for reconsideration of the Court's Order regarding its second motion to dismiss. The Court amended its Order and granted TEPCO's motion for certification of an interlocutory appeal and stayed the case at the district court level. *See Cooper*, 166 F. Supp. 3d 1103 (S.D. Cal. 2015).

///

During the *Cooper* appeal, counsel for the *Cooper* plaintiffs filed a separate action, *Bartel v. TEPCO*, 17-CV-1671 JLS (JLB) ("*Bartel I*"), against TEPCO and GE. Both TEPCO and GE moved to dismiss the complaint, and the Court granted their respective motions and dismissed the plaintiff's claims, without prejudice. *Bartel I*, 2018 WL 312701 (S.D. Cal. Jan. 5, 2018). Rather than file an amended complaint or appeal that order, counsel for the *Bartel I* plaintiffs filed the current action, *Bartel v. TEPCO*, 18-CV-537 JLS (JLB) ("*Bartel II*"). *See generally* Compl. Fifty-five new plaintiffs joined the operative Complaint as named plaintiffs in the present case. *See id.*

Both TEPCO and GE have moved to dismiss this case against them. The Court addresses each Motion in turn.

## TEPCO'S MOTION TO DISMISS

TEPCO argues that issue preclusion bars Plaintiff's claims because of the prior *Bartel I* order. Absent preclusion, TEPCO argues the Court should dismiss Plaintiff's claims for lack of personal jurisdiction. The Court agrees with TEPCO that preclusion applies and that this court lacks personal jurisdiction over TEPCO.

## ANALYSIS

### I.    Issue Preclusion

Issue preclusion bars the relitigation of issues that a Court has already adjudicated in a previous proceeding. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). When a federal district court with diversity jurisdiction must "determine the preclusive effect of a prior decision by a different federal district court sitting in diversity, the second court must apply preclusion principles according to the law of the initial court's state." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1244 (9th Cir. 2017) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). As a federal district court located in California siting in diversity and determining the preclusive effect of its own prior decision, this Court will apply California's law of issue preclusion.

Under California law, issue preclusion, applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted

against one who was a party in the first suit or one in privity with that party." *Samara v. Matar*, 5 Cal. 5th 322 (2018) (quoting *DKN Holdings LLC v. Farber*, 61 Cal. 4th 813, 825 (2015).

This case raises two questions regarding issue preclusion: (1) whether the decision in *Bartel I*, in which this Court dismissed the *Bartel I* plaintiffs' claims for lack of personal jurisdiction, was a final decision on the merits; and (2) whether the new *Bartel II* plaintiffs are in privity with the *Bartel I* plaintiffs so that any preclusive effects extends to them.

### A.    *Final Decision on the Merits*

"It is well settled that the principles of res judicata apply to the issue of in personam jurisdiction in the same manner as any other issue."[1] *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 538 (9th Cir. 1983) (citing *Baldwin v. Iowa State Traveling Mens's Ass'n*, 283 U.S. 522, 525–26 (1931)).  When a court dismisses for lack of personal jurisdiction, issue preclusion bars a plaintiff from relitigating that same issue in the same court if the other elements of issue preclusion are met.  *Sabek, Inc. v. Engelhard Corp.*, 65 Cal. App. 4th 992, 1000 (1998); *MIB, Inc. v. Super. Ct.*, 106 Cal. App. 3d 228, 234–35 (1980).

TEPCO argues that this Courts' holding in *Bartel I* dismissing the claims for lack of personal jurisdiction over TEPCO has preclusive effect.  TEPCO MTD at 14.  Plaintiffs, on the other hand, contend that the *Bartel I* decision does not preclude their claims because the Court dismissed those claims without prejudice, which is not a final judgment on the merits.  Opp'n to TEPCO MTD at 16–19.

Plaintiffs' argument is unpersuasive.  The California Court of Appeal in *Sabek, Inc.* faced this exact issue and found that Plaintiffs' "argument is untenable." 65 Cal. App. 4th at 998.  There, the Court of Appeal held that issue preclusion applied after the plaintiff had attempted to serve his complaint three previous times, and, each time, the trial court had quashed the service for lack of minimum contacts with the forum.  *Id.*  In rejecting the

---

[1] While Courts have used the term "res judicata" to reference the doctrine of claim preclusion, it is also used to reference the broader doctrine, encompassing both issue and claim preclusion.  The Court uses the term in the broader sense.

argument that issue preclusion did not apply because the judgement was not on the merits, the court noted that "[f]inality for purposes of issue preclusion is not the same as the finality essential to claim preclusion." *Id.* As a result, "even when the underlying cause of action itself is not barred, the rules of issue preclusion may nevertheless apply to a final order in which personal jurisdiction is found to be absent. In such a case, the order 'is on the merits to the extent that it will bar the plaintiff from maintaining a further action in that State, [though] it is not on the merits so far as actions in [a proper forum] are concerned.'" *Id.* at 998–99.

Here, there is no dispute that TEPCO raised the personal jurisdiction issue in *Bartel I* and that TEPCO asserts the identical personal jurisdiction defense again in this action against the same *Bartel I* plaintiffs. Because this Court decided that issue in a final, appealable order, the requisite elements of issue preclusion are met. Plaintiffs were free to amend the complaint in that action, file a motion to reconsider, or appeal that Order. Under the doctrine of issue preclusion, however, they cannot attempt to relitigate that same issue here. Accordingly, this Court's ruling in *Bartel I* that it lacks personal jurisdiction over TEPCO precludes those same *Bartel I* plaintiffs' claims against TEPCO in this action.

### B.     Privity

The *Bartel I* plaintiffs are not the only parties to this action, however. Importantly, fifty-five new Plaintiffs, who were not parties in the *Bartel I* decision, joined in this action. The general rule is that preclusion is not applicable to nonparties. *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). This is because due process requires a party have an opportunity to be heard in court. *See id.* "In accordance with due process, [issue preclusion] can be asserted only against a party to the first lawsuit, or one in privity with a party." *DKN Holdings*, 61 Cal. 4th at 824.

In California, courts have embraced a broad and "practical concept of privity." *Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 276–77 (2018). "Privity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances 'such that the nonparty should reasonably have expected

to be bound' by the first suit." *DKN Holdings*, 61 Cal. 4th at 826 (quoting *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 875 (1978)).

TEPCO argues that based on this "broad concept of privity," the fifty-five new *Bartel II* plaintiffs are in privity with the *Bartel I* plaintiffs. TEPCO MTD at 16. Privity is established, TEPCO argues, because the new Plaintiffs joined with the *Bartel I* plaintiffs in this action to bring the same claims as in *Bartel I* and because the same attorneys represent both the *Bartel I* and new Plaintiffs.

In their Opposition, Plaintiffs argue that the correct standard for privity is set forth in *Taylor v. Sturgell*, 553 U.S. 880 (2008), which allows only for limited exceptions to the general rule against nonparty preclusion. Opp'n to TEPCO MTD at 19. Under this standard, Plaintiffs contend that privity does not apply.

The Supreme Court in *Taylor* discussed six exceptions to the general rule against nonparty exclusion. 553 U.S. at 893–95. Relevant to this case, the Court held that preclusion may extend to a nonparty if "she was 'adequately represented by someone with the same interest who was a party' to the [first] suit." *Id.* at 894. (quoting *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996)). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (citations omitted). This exception aligns with the California rule for establishing privity noted above.

TEPCO contends that *Taylor* is not controlling here. TEPCO is correct that *Taylor* "applied federal common law principles in deciding the merits precluding effect of a prior federal question judgment." TEPCO Reply at 11 (emphasis omitted). The Court disagrees, however, that this distinction makes *Taylor* inapplicable to this case. Underneath the federal common law principles applied in *Taylor*, the decision was in fact "grounded in due process" considerations and thus applicable to state law preclusion as well. *See Taylor*, 553 U.S. at 901. Indeed, the California Supreme Court has cited *Taylor* favorably for its

holdings regarding nonparty issue preclusion. *See, e.g. Arias v. Super. Ct.*, 46 Cal. 4th 969, 987 (2009) (noting that nonparty employees would not be bound by prior judgment where they did not receive notice or have opportunity to be heard) (citing *Taylor*, 553 U.S. at 900–01).

With these considerations in mind, the Court finds that the *Bartel I* plaintiffs did not adequately represent the *Bartel II* plaintiffs such that they are in privy. Because the *Bartel I* putative class was never certified under Federal Civil Rule 23, the unnamed *Bartel II* parties were not represented by the *Bartel I* plaintiffs. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315–16 (2011). Further, there were no special procedures followed in *Bartel I* by this Court to ensure any nonparty's interests were protected. *See Richards*, 517 U.S. at 798 (holding application of preclusion violated due process where there were neither special procedures to protect nonparties' interests or an understanding by the initial plaintiffs that their suit was brought in representative capacity).

Accordingly, the Court holds that its ruling in *Bartel I*—that this Court lacks personal jurisdiction over TEPCO—precludes the *Bartel I* plaintiffs' claims against TEPCO in this action. The ruling does not, however, bar the new *Bartel II* plaintiffs' claims because these new plaintiffs were not in privity with the *Bartel I* plaintiffs.

## II. Personal Jurisdiction

Having found that issue preclusion does not bar the fifty-five new Plaintiffs from bringing their claims, the Court next addresses whether it has personal jurisdiction over TEPCO.

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts," *id.*, and the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits" are sufficient to make that showing." *Caruth v. Int'l. Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot

"simply rest on the bare allegations of its complaint," *Amba Marketing Sys., Inc. v. Jobar Int'l., Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint are taken as true, *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

TEPCO argues that this Court lacks personal jurisdiction over it and therefore the Court must dismiss the Plaintiffs' claims. In response, Plaintiffs first argue that TEPCO waived its personal jurisdiction defense in *Cooper* and that TEPCO's waiver should apply in *Bartel II*. Absent waiver, Plaintiffs claim that California has specific jurisdiction over TEPCO and that TEPCO is subject to nationwide jurisdiction under Rule 4(k)(2).[2]

### A. Waiver of Personal Jurisdiction

The Court first analyzes whether a waiver of personal jurisdiction in *Cooper* would apply to *Bartel II*. In *Bartel I*, this Court rejected the plaintiffs' very same argument. *See Bartel I*, 2018 WL 312701, at *2–3. Plaintiffs raise no new legal arguments for their proposition and only attempt to distinguish one of several cases cited as precedent in the *Bartel I* Order—*Dow Chemical Co. v. Calderon*, 422 F.3d 827 (9th Cir. 2005)—in a footnote in their Opposition. *See* Opp'n to TEPCO MTD at 22 n.4.

In *Dow Chemical*, the Ninth Circuit held that a group of Nicaraguan defendants, who sued in the Central District of California, did not consent to personal jurisdiction by defending on the merits an earlier action concerning the same issues also filed in the Central District. 422 F.3d at 833. The Ninth Circuit held that "defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by different parties." *Id.* at 835. Thus, "[w]ithout an independent affirmative decision to seek relief in [the same] courts, there can be no imputation of a conscious decision to settle all aspects of a dispute" in a later action. *Id.* at 836.

Plaintiffs attempt to distinguish the instant case from *Dow Chemical* by stating that the "holding is inapposite where, as here, the Plaintiffs to the subsequent case were also

---

[2] In *Bartel I*, Plaintiffs also argued that Washington, D.C. had general jurisdiction over TEPCO. Plaintiffs have not raised that argument in *Bartel II*.

parties to the original case." Opp'n to TEPCO MTD at 22 n.4. As they did in *Bartel I*, Plaintiffs claim they were parties in *Cooper* because they were part of the putative *Cooper* class. *Id.* at 22. This argument is still unpersuasive. "'[A] nonnamed class member is [not] a party to the class-action litigation <u>before the class is certified</u>.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (alterations in original) (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (Scalia, J., dissenting)). Because "there [was] no certified class in *Cooper* . . . the *Bartel* [*II*] plaintiffs would therefore be, at most, unnamed members of an uncertified, proposed putative class." *See Bartel I*, 2018 WL 312701, at *3. The *Bartell II* plaintiffs are therefore not parties to the *Cooper* action.

Accordingly, this Court concludes that TEPCO did not consent to jurisdiction in *Bartel II* by participating in *Cooper*. *See In re Cathode Ray Tube CRT Antitrust Litig.*, 27 F. Supp. 3d 1002, 1009 (N.D. Cal. 2014) ("[E]ven if actions are closely related—as when different plaintiffs sue the same defendant in different cases but based on the same facts—defendants do not waive their personal jurisdiction defense by raising it only in a later action, so long as the defendant is not independently seeking affirmative relief in the same court concerning the same transaction or occurrence.").

### B.    *Specific Jurisdiction*

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994). California's long-arm statute, California Code of Civil Procedure § 410.10, allows courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." This provision "allows courts to exercise jurisdiction to the limits imposed by the Due Process Clause of the U.S. Constitution." *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 863 (9th Cir. 2003).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts,

ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "[T]he test for personal jurisdiction requires that 'the maintenance of the suit . . . not offend traditional notions of fair play and substantial justice.'" *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03 (1982) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation marks omitted) (ellipsis in original).

The required minimum contacts depend on whether the plaintiffs assert the Court has "general" or "specific" personal jurisdiction over TEPCO. General jurisdiction means that the defendant's connections with the forum are so significant that it may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Specific jurisdiction requires a more focused showing that the plaintiff's claims arise from or relate to the defendant's conduct within the jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

*1. Purposeful Direction and Purposeful Availment*

"Purposeful direction" and "purposeful availment" are two different concepts. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). "A purposeful availment analysis is most often used in suits sounding in contract" and "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort" and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 802–03.

a.      Purposeful Direction

The purposeful direction test applies only to intentional torts, not negligence claims. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007); *cf Hernandez v. City of Beaumont*, No. EDCV 13-00967 DDP (DTBx), 2014 WL 6943881, at *3 (C.D. Cal. Dec. 8, 2014) (applying the purposeful availment test because the plaintiff's claims were based on negligence and products liability). A court may apply both tests when the plaintiff asserts multiple claims. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

Plaintiffs bring claims against TEPCO under negligence, strict liability for ultrahazardous activities, res ipsa loquitur, negligence per se, loss of consortium, and survival and wrongful death. *See generally* Compl. While both Parties make arguments regarding both the purposeful availment and the purposeful direction tests, here—just as this Court noted in *Bartel I*—it is "unclear if Plaintiffs allege[d] any intentional torts against TEPCO."[3] *Bartel I*, 2018 WL 312701, at *4. Plaintiffs have not addressed that ambiguity

---

[3] One reason for the uncertainty the Court noted was that Plaintiffs checked the "Other Personal Injury" box in the "Torts" section in their Civil Cover Sheet when alleging the nature of their suit. *Bartel I*, 2018 WL 312701, at *4. In *Bartel II*, Plaintiffs did not check this box, instead checking only the product liability box. ECF No. 1-1. This is not sufficient to conclusively determine the claims Plaintiffs bring, but it is indicative that Plaintiff do not raise intentional torts here, despite their many allegations of intentional conduct. *See generally* Compl.

18-CV-537 JLS (JLB)

in the *Bartel II* complaint.  Based on the claims brought forward by Plaintiffs, and without more than the allegations of intentional conduct, the Court is satisfied that Plaintiffs have not raised any intentional torts and therefore only the purposeful availment test applies.

Even if Plaintiffs did in fact raise intentional tort claims, under the purposeful direction test the Court would find that TEPCO did not purposefully direct its activities at California.  Plaintiffs have failed to raise any new arguments or facts from those raised in *Bartel I* concerning purposeful direction.  *See generally* Opp'n to TEPCO MTD; *Bartel I*, 2018 WL 312701, at *4–6.  Consequently, the Court finds no reason to depart from its holding in *Bartel I* that the purposeful direction test is not satisfied.

### b.    Purposeful Availment

A defendant purposefully avails itself of a forum state when that defendant "perform[s] some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  *Sinatra v. Nat'l. Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).  The defendant "submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State."  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011).

Plaintiffs point to two contacts as evidence of purposeful availment.[4]  First, Plaintiffs allege TEPCO availed itself of California because it registered to do business in California in 2003.  Opp'n to TEPCO MTD 30.  In its Statement of Designation filed in 2003, TEPCO stated its business purposes were, among others, the "business of supply of electricity[;]"

---

[4] Additionally, Plaintiffs point to several other of TEPCO's business relationships, including: TEPCO's forty percent ownership of Eurus Energy America Corporation, a corporation that, according to Plaintiffs, has its principle place of business in San Diego, California,  Opp'n to TEPCO MTD 30-31; TEPCO's 2017 partnership with Energy Impact Partners, a California-based private equity firm, *id.*; and TEPCO's 2016 partnership with Energy Excelerator, a Hawaii and Palo Alto-based nonprofit company, *id.* "Only contacts occurring prior to the event causing the litigation may be considered" in evaluating the defendant's contacts with the state.  *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).  Plaintiffs do not allege what date the Eurus ownership began, and the Opposition indicates it occurred after the FNPP meltdown occurred in March 2011.  Thus, all of the TEPCO partnerships that Plaintiffs point to occurred after the date of the event at issue in this litigation and have no bearing on the personal jurisdiction issue here.

the "manufacture and sale of electronic apparatus and machines[;]" and the "development, exploitation processing, purchase and sale, and transport of energy resources." ECF No. 24-1 at 4. TEPCO surrendered its business license in 2006. Opp'n to TEPCO MTD at 30. TEPCO's three-year incorporation in California from 2003 to 2006 is contact with the state which promotes business within the state. This contact is sufficient to meet the purposeful availment requirement. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (the "purposeful availment" requirement is satisfied if the defendant "has taken deliberate action within the forum state").

Second, Plaintiffs allege that TEPCO's business relationship with GE constitutes purposeful availment. Opp'n to TEPCO MTD at 29–30. GE Nuclear Energy, which is the unit of GE that designed the reactor at FNPP, was headquartered in San Jose, California, until 2005. *Id.*; Compl. ¶ 225. Plaintiffs allege that TEPCO and GE's relationship was substantial, including contracts for the design, construction, and maintenance of the FNPP by GE. *Id.*; Compl. ¶ 226. Plaintiffs do not give any details, however, about where the parties negotiated and signed the alleged contracts.

Sufficient contacts can occur without physical presence in forum state, *see Burger King*, 471 U.S. at 476, but nothing regarding the relationship between GE and TEPCO shows that TEPCO reached out to the forum and "invoked the benefits and protections of [California's] laws." *Id.* at 475. The relationship did not create an ongoing relationship in California; instead, according to Plaintiffs, it created an ongoing relationship for obligations in Japan. *See* Compl. ¶¶ 223–228 (noting the contract called for ongoing maintenance of FNPP).

There is no question GE availed itself of the forum State. And there is no question that TEPCO and GE's relationship created ongoing obligations for GE in Japan. But the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with . . . other parties. But a defendant's

relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Here, Plaintiffs have failed to show how TEPCO—rather than GE—has availed itself to the forum state. The mere fact that TEPCO did business with a corporation with its headquarters in California is not enough. The Court therefore declines to find that TEPCO's business relationship with GE is sufficient to constitute purposeful availment.

Having found at least one contact sufficient to meet the purposeful availment test, the Court continues on to the next prong of the specific personal jurisdiction test to determine whether that contact is related to Plaintiffs' claims.

### 2. *Arising Out of the Forum Related Contacts*

The Ninth Circuit follows a "but for" test in determining whether the claim "arises out of" the nonresident's forum-related activities. *Ballard*, 65 F.3d at 1500. In other words, if the plaintiff would not have suffered loss "but for" the defendant's activities, this element is satisfied. *Id.*

In *Bartel I*, this Court found that Plaintiffs' claims did not arise out of TEPCO's business registration in California. The Court held that the Plaintiffs' loss still would have occurred even if TEPCO had not registered its business in California. *Bartel I*, 2018 WL 312701, at *6. Plaintiffs have raised no new arguments as to why this Court should find differently here. Thus, in accordance with that holding, the Court concludes that Plaintiffs' claims do not arise out of TEPCO's business registration and Plaintiffs fail to satisfy this element of specific jurisdiction.

Although the Court found that the business relationship between TEPCO and GE is insufficient to meet the purposeful availment prong, the Court nevertheless finds that Plaintiffs' claims also do not arise out of those contacts. Plaintiffs' negligence claims against TEPCO are based on inadequate maintenance, operation, and control of the FNPP. *See* Compl. ¶ 8. Plaintiffs have failed to show a "connection between the forum and the specific claims at issue." *Bristol-Meyers*, 137 S. Ct at 1781. Plaintiffs failed to demonstrate how these negligence allegations are tied to TEPCO's business relationship with GE in the forum state. Plaintiffs also raise no facts that show any relevant activity

occurred in California, such as the maintenance, operations decisions, or any of the decisions during the disaster.

Plaintiffs do allege that GE designed the reactor in California. Compl. ¶ 225. But the claims for product liability are not against TEPCO; Plaintiffs raise those claims only against GE. The product liability claims against GE in conjunction with the asserted business relationship between the Defendants is not sufficient to meet the requirement that the claims against TEPCO arise from these contacts. Thus, Plaintiffs negligence claims did not arise out of the contacts in California related to the business relationship between TEPCO and GE.

Because Plaintiffs are unable to prove the first two elements of the specific personal jurisdiction test, the Court need not proceed to the third element. California therefore does not have specific personal jurisdiction over TEPCO.

## C.  Jurisdiction Under Rule 4(k)(2)

Plaintiffs also claim that personal jurisdiction over TEPCO is proper under Federal Rule of Civil Procedure 4(k)(2). This Rule is often referred to as the federal long-arm statute. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Rule 4(k)(2) imposes three requirements: "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.* at 1159 (citations omitted). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, [the court] consider[s] contacts with the nation as a whole." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

The Advisory Committee notes to Rule 4(k)(2) state:

> This narrow extension of the federal reach applies only if a claim is made against the defendant under federal law. It does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country, even though there

might be diversity or alienage subject matter jurisdiction as to such claims.

Fed. R. Civ. P 4(k)(2) advisory committee's note to 1993 amendment; *see also Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 680 (D. Del. 2014) (holding Rule 4(k)(2) is only applicable if the case "arises under federal law and is not pending before the court pursuant to the court's diversity jurisdiction"); *United States v. Int'l Bhd. of Teamsters*, 945 F. Supp. 609, 617 (S.D.N.Y. 1996) (same).

Plaintiffs argue that their claims arise under federal law. Opp'n to TEPCO MTD at 33–34. The Court disagrees. Plaintiffs raise only state law claims and this case is pending before the Court under diversity jurisdiction. Thus, Plaintiffs' claims do not "arise" under federal law and personal jurisdiction over TEPCO pursuant to Rule 4(k)(2) is not proper.

## III.    Conclusion

Based on the foregoing, the Court concludes that the 139 Plaintiffs named in both *Bartel I* and *Bartel II* are precluded from raising their claims in this case. Further, the Court finds that there is no specific personal jurisdiction over TEPCO in California. Finally, personal jurisdiction pursuant to Rule 4(k)(2) is not proper. Thus, the Court **GRANTS** TEPCO's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' case against TEPCO for lack of personal jurisdiction.

### GE'S MOTION TO DISMISS

In its Motion, GE argues that this Court should conduct a choice-of-law analysis and apply Japan's Act on Compensation for Nuclear Damage, Act No. 147 of June 17, 1961 ("Compensation Act") which precludes GE from liability for nuclear events. GE MTD at 18–28.[5]

---

[5] GE also argues that the Court should dismiss Plaintiffs claims under the doctrine of forum non conveniens or the political question doctrine. *Id.* at 34–38. Further, GE argues that, if California law applies, Plaintiffs' claims are time-barred, *id.* at 39–42, and that Plaintiffs fail to state a claim against GE for several factual and legal deficiencies in the Complaint, *id.* at 42–50. Finally, GE argues that all claims against GE should be dismissed as a matter of international comity, *id.* at 50–51, and that the Court lacks

18-CV-537 JLS (JLB)

## I.    Choice-of-Law

GE requests the Court perform a choice-of-law analysis as to the issue of GE's liability, arguing Japanese law applies and precludes GE from liability.[6]  GE MTD at 17–18.  Plaintiffs argue that the Court should defer making a choice of law analysis at this point, although, California substantive law should apply to the case and GE is strictly liable.[7]  Opp'n to GE MTD at 10–20.

In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987).  California applies a three-step "governmental interest" analysis to choice-of-law questions:

> First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction.  Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied.  "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied."  On the other hand, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses

---

jurisdiction because the Convention on Supplemental Compensation for Nuclear Damage, *id.* at 51. Because the Court agrees with GE that Japanese law applies, the Court does not reach these arguments.

[6] In their briefs and at oral argument, Plaintiffs asserted that the Ninth Circuit has already expressed a position on GE's arguments regarding the choice-of-law issue.  *See, e.g.*, Opp'n to GE MTD at 12 n.1 (arguing that "applying Japanese law . . . would facially conflict with the Ninth Circuit's determination and the law of the case").  But, as the Ninth Circuit made clear, "the district court has yet to undergo a choice-of-law analysis" and it is yet to be determined "what body of law applies."  *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1215 (9th Cir. 2017).  Further, the issue regarding the applicability of the Compensation Act was not before the Ninth Circuit.

[7] The Parties also reference American federal law in their choice-of-law arguments.  Plaintiffs argue the Court could "potentially even cobbl[e] together the appropriate law from California, Japan, American federal law and other appropriate sources," Opp'n to GE MTD at 11, but ultimately take the position that if the Court does consider choice of law, it should apply California law.  *Id.* at 14.  Based on the pleadings, the claims alleged, and the facts of the case, the Court will conduct its choice-of-law analysis as to the laws of California or Japan.

on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*Abogados v. AT&T Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (internal citations omitted). Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision. *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978). "[T]he party seeking to dislodge the law of the forum[] bears the burden of establishing that the foreign jurisdiction has an interest, cognizable under California conflict-of-law principles, in the application of its law to the dispute at hand." *McGhee v. Arabian Am. Oil Co.,* 871 F.2d 1412, 1424 (9th Cir. 1989).

### A. *Preliminary Choice-of-Law Issues*

Before the Court conducts the choice-of-law analysis, it addresses Plaintiffs' preliminary arguments regarding the appropriateness of conducting the analysis at this point in the litigation.

Plaintiffs first argue that the choice-of-law determination requires additional time and development to fully analyze, thus the Court should not decide the issue at the motion-to-dismiss stage. Opp'n to GE MTD at 10–12. The Court disagrees. "The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case." *Czuchaj v. Conair Corp.*, No. 13-cv-1901 BEN (RBB), 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014). As long as a court has sufficient information to thoroughly analyze the choice-of-law issue, *see In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007), and discovery will not likely affect the analysis, *see Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *5–6 (N.D. Cal. Apr. 22, 2013), it is appropriate for the Court to undertake a choice-of-law analysis at the motion-to-dismiss stage. Here, GE and Plaintiffs fully briefed the issues and discovery will not affect the analysis. Thus, the Court finds that there is adequate information to analyze the specific choice-of-law determination as to the issue of GE's liability.

Next, Plaintiffs argue that the Compensation Act's channeling provision is procedural, not substantive, and therefore not appropriate for the Court apply. Federal courts exercising diversity jurisdiction must apply the substantive law of the state in which they are located except on matters governed by the U.S. Constitution or federal statutes. Federal law, however, governs procedural issues. *Erie R.R. Co. v. Tompkins*, 304 US 64, 78 (1938).

Whether or not the Court applies Japanese law or California law in the first place is a choice-of-law issue, and choice-of-law rules are considered "substantive" for *Erie* purposes. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (a federal court in a diversity case must apply the choice-of-law rules of the state in which it sits); *see also* O'Connell & Stevenson, *Rutter Group Prac. Guide: Federal Civil Procedure Before Trial*, Ch. 1-B (The Rutter Group 2017) (same). The law of California will therefore dictate which forum's law will apply to this case.

As for the Compensation Act itself, the Court concludes that this issue is substantive. Plaintiffs have provided no authority to support their assertion that application of the Compensation Act's channeling provision is procedural. Applying the Compensation Act would significantly affect the result of this litigation because whether or not the Compensation Act is applied determines the entire case as to GE's liability. This makes the Act a substantive one, and thus proper for the Court sitting in diversity to apply. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (finding issue substantive if applying the foreign law, rather than the forum State's law, "significantly affect[s] the result of a litigation").

Finally, Plaintiffs argue the Court should apply the doctrine of dépeçage and conduct a choice-of-law analysis for each cause of action. Opp'n to GE MTD at 11–12. Indeed, "[w]here a party raises choice of law issues with regard to more than one cause of action, 'a separate conflict of laws inquiry must be made with respect to each issue in the case.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-01827 SI, 2013 WL 6327490, at *5 (N.D. Cal. Dec. 3, 2013) (citing *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 920

(2001).)  The only issue presented by GE's Motion as it relates to choice-of-law, however, is the issue of GE's liability.  The Parties agree that, if the Court applies Japanese law to this matter, GE will be completely released from liability.  *See* Opp'n to GE MTD 18 ("If the Court enforce[s] the [Compensation] Act . . . , Plaintiffs will be left with . . . damages allocated under Japan's Compensation Act, only recoverable against TEPCO."); GE MTD at 12 ("Under Japanese law . . . GE has no liability.").  While the Court would perform choice-of-law analyses on the separate causes of action were it necessary, the only issue here is GE's liability.

### B.   *Choice-of-Law Analysis*

#### 1.   *Differences in the Forum Laws*

The first factor in California's governmental interest test asks whether the laws of the two forums differ.  The Parties and the Court all agree the laws absolutely conflict.

Under Japanese law, the Compensation Act applies.  The Compensation Act channels liability for nuclear damage exclusively to the licensed operator of a nuclear installation.  *See* Compensation Act, art. 3 & 4 (when a Nuclear Operator in the course of Operation of a Nuclear Reactor causes Nuclear Damage, "no other persons shall be liable to compensate for damages other than the Nuclear Operator").  The Parties agree that if the Court were to apply this Act, it must dismiss all claims against GE.

In contrast, California law holds the manufacturer liable if a product is defective.  Under California law, "[a] manufacturer is strictly liable for injuries caused by a product that is (1) defectively manufactured, (2) defectively designed, or (3) distributed without adequate instructions or warnings of its potential for harm."  *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 13 (1992) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 428 (1978)).  If Plaintiffs prove that GE defectively manufactured or designed the reactor, under California law, GE would be strictly liable for Plaintiffs' injuries.

#### 2.   *"True Conflicts" Analysis*

The second factor in California's governmental interest test requires the Court to evaluate each jurisdiction's interest in the application of its law to the issue at hand.  The

Court must examine the governmental policies underlying the California and Japanese laws, "'preparatory to assessing whether either or both states have an interest in applying their policy to the case.' Only if each of the states involved has a 'legitimate but conflicting interest in applying its own law' will [the court] be confronted with a 'true' conflicts case." *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 163 (1985) (internal citations omitted). "When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied." *Hernandez v. Berger*, 102 Cal. App. 3d 795, 799 (1980) (internal citations omitted).

a. California's Interest

Plaintiffs allege GE's Boiling Water Reactors contained numerous design and manufacturing defects for which GE should be liable. Compl. ¶ 5. As noted, California law holds manufacturers strictly liable for products defectively manufactured or designed. *Hufft*, 4 Cal. App. 4th at 13. The governmental interest underlying California's strict products liability law

> "is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." . . . The other purposes, or public policies, behind the creation of the doctrine of strict products liability in tort as a theory of recovery are: "(1) to provide a 'short cut' to liability where negligence may be present but difficult to prove; (2) to provide an economic incentive for improved product safety; (3) to induce the reallocation of resources toward safer products; and (4) to spread the risk of loss among all who use the product."

*Barrett v. Super. Ct.*, 222 Cal. App. 3d 1176, 1186 (1990) (internal citations omitted).

Plaintiffs argue California has a strong interest in applying its laws to this case because California seeks to "protect our servicemen and women and [] uphold the principles of corporate responsibility that are critical to our justice system." Opp'n to GE MTD at 14. Plaintiffs also argue California has a strong public policy behind protecting

those injured on account of defective products. *Id.* The primary purpose behind California's strict products liability law is to guarantee that the costs of injuries resulting from defective products are borne by manufacturers, not victims. *Id.* The Court agrees this interest is significant and, thus, California has an interest ensuring compensation for the victims from California.

California has no interest, however, ensuring compensation for plaintiffs who neither are California residents nor injured in California. *See Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. App. 5th 757, 771 (2017) (citing *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 583 (1974)). Although California has an interest in ensuring compensation for the Plaintiffs residing in California, this interest does not extend to the other non-resident Plaintiffs.

Other interests tied to California's strict products liability do apply to non-residents. Specifically, California has an interest in encouraging corporations to manufacture safe products regardless of whether these products will affect California residents. *See Hurtado*, 11 Cal. 3d at 583–584. California also has an interest in deterring defective nuclear power plants, both through the strict liability imposed in California for defective products and the availability of punitive damages. These are significant interests that apply whether or not Plaintiffs reside in California.

After weighing these factors, the Court finds that California has a strong interest in having its strict products liability law apply to this matter.

b. Japan's Interest

GE argues that Japan has a compelling interest in "applying its own law on allocation of liability to a nuclear power plant accident occurring in Japanese territory." GE MTD at 22–23. GE cites this Court's past Order in *Cooper*, wherein it stated, "Japan has an interest in adjudicating claims arising from the March 11, 2011 earthquake and tsunami that devastated large swaths of the country as evidenced by Japan's large investment in responding to the disaster." GE MTD at 22 (citing *Cooper*, 166 F. Supp. 3d at 1135).

Japan also has an interest because it is the place of the wrong. The "place of the wrong" is the state where the last event necessary to make the actor liable occurred. *Mazza*

v. *Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (citing *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957)). Plaintiffs' injuries occurred off the coast of Japan as a result of the release of radioisotopes from the FNPP, Compl. ¶ 4, and "the situs of the injury remains a relevant consideration" in choice-of-law issues. *Offshore Rental*, 22 Cal. 3d at 168.

Finally, Japan has an interest in imposing liability based on and consistent with the Compensation Act.

> When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, . . . the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state.

*McCann*, 48 Cal. 4th 68, 91 (2010); *see also McGhee*, 871 F.3d at 464 (holding Turkey has "a legitimate interest in limiting the liability of corporations that conduct business within its borders").

After considering these interests, the Court concludes that Japan also has a strong interest in resolving the issues surrounding the incident which occurred in Japan. Having found that both Japan and California have an interest in having their own laws applied, a true conflict exists.

### 3. Comparative Impairment Analysis

Once the trial court "determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting a true conflict, the court must take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Wash. Mut. Bank, FA*, 24 Cal. 4th at 920. "In making this comparative impairment analysis, the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and

current status of the states' laws' and 'the function and purpose of those laws.'"[8]  *Id.* (quoting *Offshore Rental*, 22 Cal. 3d at 166).  "Accordingly, [the Court's] task is not to determine whether the [Japanese] rule or the California rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant [] interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case."  *McCann*, 48 Cal. 4th at 97.

Plaintiffs argue California's interest would be significantly impaired if Japanese law is applied because GE's liability would go "unexamined" and GE would evade financial responsibility for its alleged misdeeds.  Opp'n to GE MTD at 18–19.  According to Plaintiffs, without a finding of liability as to GE, Plaintiffs' rights will not be vindicated, California's interest in ensuring victims are compensated would be frustrated, and California could be responsible for Plaintiffs' long-term medical bills.  *Id.*; *see also Munguia v. Bekens Van Lines, LLC*, No. 1:11-cv-01134-LJO-SKO, 2012 WL 5198490, at *5 (E.D. Cal. Oct. 19, 2012) (concluding California has an interest that "its residents are compensated for their injuries and do not become dependent on the resources of California for necessary medical, disability, and unemployment benefits").

Predictably, GE disagrees.  GE contends that the Compensation Act could fully compensate Plaintiffs for their injuries.  GE MTD at 27.  Under the Compensation Act, Plaintiffs with valid claims may recover against TEPCO—the operator liable for such injuries—which has already acknowledged its liability for any harm caused by the radiation and has already paid over $75 billion to compensate those affected by the incident.  *Id.*

---

[8] Neither Party makes any arguments as to the "history and current status of the states' laws."  *Offshore Rental*, 22 Cal. 3d at 167.  In *Offshore Rental*, the court found California's law to be "unusual and outmoded" in contrast to Louisiana's "prevalent and progressive" law, a fact the court found weighed toward Louisiana having a stronger interest in applying its law.  *Id.*  There is nothing to indicate either California's law on product liability or Japan's Compensation Act are outmoded; indeed, both remain prevalent today.  *See Chen*, 7 Cal. App. 5th 757 (applying California's strict liability law in 2017); Nasu Decl. 9 (noting the Act has been, and continues to be, applied to provide compensation to the victims of the 2011 incident at the Fukushima Plant).

18-CV-537 JLS (JLB)

1    The Court finds no convincing support for Plaintiffs' assertion that Japanese law will

2    leave them with "minimal and insufficient damages" requiring the U.S. Government or

3    California to pick up the financial balance.  And while Plaintiffs' contention that litigating

4    in the Japanese forum will be exponentially more difficult than litigating in California may

5    be true, Plaintiffs have shown no law or facts which indicate that the Japanese forum is

6    closed to any of the named, or unnamed, Plaintiffs.  As the California Supreme Court has

7    held, "the policy underlying a statute may [] be less 'comparatively pertinent' if the same

8    policy may easily be satisfied by some means other than enforcement of the statute itself."

9    *Offshore Rental*, 22 Cal. 3d at 166.  Such is the case here.  Because compensation for

10   Plaintiffs' injuries is available in the Japanese forum, Plaintiffs have not demonstrated how,

11   or to what extent, California's policy of compensating injured victims will be frustrated.

12   Plaintiffs also argue that California's interest in deterring tortfeasors would be

13   greatly impaired.  Opp'n to GE MTD 17–18.  If Japanese law is applied, Plaintiffs concede

14   that dismissal of their claims would follow.  They argue that, if this occurs, no forum would

15   be capable of holding GE responsible, thwarting California's interest in deterrence.  *Id.*

16   Although deterrence is a legitimate interest, "California decisions have adopted a

17   restrained view of the scope or reach of California law with regard to the imposition of

18   liability for conduct that occurs in another jurisdiction and that would not subject the

19   defendant to liability under the law of the other jurisdiction."  *McCann*, 48 Cal. 4th at 99.

20   For example, in *McCann*, the California Supreme Court applied California's choice-

21   of-law analysis and determined that the application of Oklahoma law was more

22   appropriate, despite the fact that Oklahoma's statute of limitations barred the plaintiff—a

23   California resident exposed to asbestos in Oklahoma—while California's statute of

24   limitations did not.  48 Cal. 4th at 99.  Although that decision meant the plaintiff could not

25   recover at all from the defendant, the court held Oklahoma had a "predominate interest" in

26   regulating conduct that occurred within its borders and an interest "in being able to assure

27   individuals and commercial entities operating within its territory that applicable limitations

28   ///

on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 97.

Likewise, in *Offshore Rental*, the California Supreme Court applied Louisiana law in a case involving a California corporation seeking to recover for loss of services of an employee injured in Louisiana. 22 Cal. 3d at 160. The court concluded that, "[b]y entering Louisiana, plaintiff exposed itself to the risks of the territory, and should not expect to subject defendant to a financial hazard that Louisiana law had not created." *Id.* at 169 (internal quotations and alterations omitted). Louisiana's "vital interest in promoting freedom of investment and enterprise *within Louisiana's borders*" prevailed over California's interest in compensating residents. *Id.* at 168 (emphasis in original).

The reasoning from both *McCann* and *Offshore Rental* is applicable to the present case, and weighs in favor of Japan having the more impaired interest. Japan has an interest in ensuring the uniform applicability of the Compensation Act, which limits liability to companies operating in Japan in the field of nuclear reactor operations. Japan instituted the Compensation Act to encourage businesses to participate in Japan's nuclear industry, and it has an interest in applying its law fairly to all businesses who participate. *See* Declaration of Kohei Nasu ("Nasu Decl."), ECF No. 19-5 at 9; *see also Meraz v. Ford Motor Co.*, No. CV 13-00260 PSG (VBKXx), 2014 WL 12558123, at *5 (C.D. Cal. June 13, 2014) (citing *McCann* to hold Georgia has an interest in limiting liability for commercial activity conducted within the state to provide fair treatment to, and an appropriate incentive for businesses to operate within the state). Furthermore, Plaintiffs boarded a vessel destined for Japan, thus exposing themselves to the "risks of the territory." Plaintiffs therefore cannot expect to subject GE to a "financial hazard" under California law because one of the ships carrying Plaintiffs that provided aid to Japan had a home port of San Diego. *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180 (2007) (finding that because incident occurred within Alabama's borders, Alabama had a "presumptive interest in controlling the conduct of those persons who use its roadways, absent some other compelling interest to be served by applying California law").

In sum, after balancing the impairments and reviewing the relevant case law, the Court is persuaded that Japan's interests would be "more impaired" if its law was not applied to this matter.  Accordingly, Japanese law applies to the issue of GE's liability.

### C.  *Application of Japanese Law*

Having determined that Japanese law applies, the Court must next determine the ramification of that finding.  Article 3 of the Compensation Act provides that when damage that is attributable to the operation of a nuclear reactor occurs, the Nuclear Operator is liable for all damages in connection with the operation of the nuclear reactor. Compensation Act, art. 3.  Article 4 provides, in the case set forth in Article 3, "no other persons shall be liable to compensate for damages other than the Nuclear Operator."  *Id.* art. 3 & 4.  Justice Kohei Nasu, former Justice on the Japanese Supreme Court, explains that the Compensation Act "has adopted principles of . . . strict and unlimited liability of the Operator of a nuclear plant . . . [and] channeling of third party liability for Nuclear Damage exclusively to the Operator."  Nasu Decl. at 9.

Only two questions remain about the applicability of the Compensation Act to this Case.  The first is whether GE is an "Operator" within the meaning of the statute.  Under Article 2 of the Compensation Act, there are a variety of definitions that may qualify an entity as a "Nuclear Operator."  *See* Compensation Act art. 2 (listing eight possibilities). In his declaration, Justice Nasu, states that, in his opinion, GE is not an Operator because it is not licensed as such in Japan.  Nasu Decl. at 9.  GE also points to a recent Tokyo High Court decision which found that the Compensation Act precluded a finding of liability against any entity other than TEPCO.  GE MTD at 21.  The Court finds that GE does not fall within any of the Compensation Act's definitions for a Nuclear Operator, and thus GE "shall [not] be liable to compensate for damages."  *See* Compensation Act art. 3.

The second question is whether the exception to the Compensation Act's channeling provision applies.  Article 3 provides that the channeling provision does "not apply in the case where the damage was caused by an abnormally massive natural disaster."  Compensation Act, art. 3.  A massive 9.0 magnitude earthquake, giving rise to tsunami

27

waves more than 40 feet high that struck and severely damaged the FNPP, releasing radiation as a result, caused the damage in this case. Although this exception would seem to apply, the Japanese government and courts have taken the position that it does not. GE MTD at 21–22; *see also* Declaration of David Weiner, Ex. D, ECF No. 19-8 at 6 (July 19, 2012 Tokyo District Court decision finding Article 3 exception does not apply). Moreover, as GE points out, even if the exception were to apply, liability would fall to the Japanese government under Article 17 of the Compensation Act, resulting in no liability for GE. GE MTD at 22 (citing Compensation Act art. 17). Based on the clear positions of the Japanese government and courts regarding the applicability of the exception, the Court agrees that the Article 3 exception does not apply.

The Court concludes that under the Compensation Act, all liability for the meltdown channels to the Nuclear Operator (TEPCO), GE is not an Operator under the Act, and that no exception applies. Thus, none of Plaintiffs' claims against GE can stand under the Compensation Act.

## II. Conclusion

Under California's choice-of-law governmental interest test, the Court finds that Japanese law applies to this case. Further, the Court interprets the Japanese Compensation Act to channel all liability from third parties to the Nuclear Operator. Because GE is not an Operator and no exception applies, the Compensation Act precludes all liability against GE. Thus, the Court **GRANTS** GE's Motion to Dismiss and **DISMISSES** all of Plaintiffs' claims against GE pursuant to the Compensation Act.

///
///
///
///
///
///
///

## CONCLUSION

Based on the foregoing, the Court (1) **GRANTS** GE's Motion to Dismiss (ECF No. 19) and **DISMISSES** Plaintiffs' Complaint as to the claims against GE; and (2) **GRANTS** TEPCO's Motion to Dismiss (ECF No. 20) and **DISMISSES** Plaintiffs' Complaint **WITHOUT PREJUDICE** as to the claims against TEPCO. The Court dismisses the complaint against TEPCO without prejudice so that Plaintiffs may file their claims in the proper forum.

**IT IS SO ORDERED.**

Dated: March 4, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

18-CV-537 JLS (JLB)